**Robert Marvin WALLACE, Appellant,**

v.

**The STATE of Texas.**

**No. 937–02.**

Court of Criminal Appeals of Texas, En Banc.

May 21, 2003.

Judy Hodgkiss, Paris, for Appellant.

Gary L. Waite, Asst. Co. Atty., Paris, Matthew Paul, State's Atty., Austin, for State.

Before the court en banc.

## OPINION

HOLCOMB, J., delivered the opinion of the Court, in which KELLER, P.J., and MEYERS, PRICE, KEASLER, HERVEY, and COCHRAN, JJ. joined.

The question presented is whether the court of appeals erred in upholding the

trial court's denial of appellant's request for a hearing on his motion for new trial. We hold that the court of appeals used the wrong analysis but reached the right result.

### The Controversy

A Lamar County grand jury indicted appellant for aggravated assault. See Tex. Pen.Code §§ 22.01(a)(1) & 22.02(a)(2). The case went to trial before a petit jury. At that trial, five eyewitnesses (Randy Molaris, Bert Babb, Betty Beth Merritt, Sabra Dee Stansell, and Amy Lynn Smith) positively identified appellant as the person who assaulted Molaris with a baseball bat in a Paris residence on the evening of July 20, 2000. Two additional witnesses (Melissa Layton and Meagan Streety) testified that, on the same evening, they heard screaming coming from the residence and then saw appellant exit the residence carrying a baseball bat.

Stansell and Smith also testified that, in an attempt to protect appellant from prosecution, they initially told the Paris police that a man named "Billy" was the person who assaulted Molaris. Smith testified further that she once told a friend that "Billy Ray" was the assailant.

The jury found appellant guilty as charged and later assessed his punishment, enhanced by one prior felony conviction, at imprisonment for 25 years. See Tex. Pen.Code § 12.42(b).

Appellant subsequently filed a motion for new trial on the basis of newly discovered evidence, and he requested a hearing on the motion. Appellant's motion stated, in relevant part, that "[t]wo new witnesses have come forward following the article in the Paris newspaper regarding the case, who both state that the assailant was Billy Ray Williams." Appellant filed two affidavits in support of his motion. The first affidavit, that of Donna S. Marshall, read as follows:

I talked to Billy Ray Williams around April 1, 2001, after finding out Robert Wallace had been convicted on assault charges. It was rumored Billy had committed this crime. We are real good friends, so I wanted to ask him about it. He came over [to] my house & after about an hour of conversation, I brought up the subject. In the begining [sic] he said he didn't do it & then began talking about whether he would get time for something like that or could it be probated. I kept talking & then he kept saying why did Amy and Jenny make statements. We argued back and forth because as far as I knew Jenny was never there. No one had ever mentioned Jenny & he just kept saying they would be taken care of. We continued conversation [and] he was asking why would Sabra say Bobby did it. He also mentioned moving to Annona right after the incident & came back right after this conviction. In July he had moved back from living in Ft. Worth with a woman named Teresa.

Billy has a history of violence against other [sic]. A few years ago he set Janie Clemenske on fire for sleeping in his bed. I have also witnessed attacks on Brian Shughart & a man named Guye. He has beaten an ex named Teresa & Jessica Brooks. He had tried to cut his own throat one night when we were drinking. Three of us held him down and he was bleeding.

On Sunday, April 22nd 2001 he came back over & was saying he called the lawyer in Ft. Worth who did the assault case on Teresa & asked if he confessed to this would he see time. The lawyer said he would go to jail & advised against it. He also reinforced that Amy, Sabra & Jenny he could take care of.

The second affidavit, that of Teresa Ashford, read as follows:

My name is Teresa Ashford.

I formly [sic] lived with Billy Ray Williams.

Around a[sic] 1 yr ago I seen him beat up a man named Stanley Millier, in our home which resulted in Stanley's jaw being broke 3 times in 3 different places. And he was in the hospital for 2 days.

He is proned [sic] to viloence [sic] and has physically beat me numerous of times in the past.

He has also beat Brian Baughn on his front porch with a baseball bat. He has told me about a time when he had set a man on fire with lighter fluid for sleeping in his bed.

On one aocasion [sic] we were awoke by some friends that were being followed, Billy Ray went outside and the guy got out of the pickup with a baseball-bat [and] he swung at Billy Ray and Billy Ray took the bat away from him and busted his windshield.

The trial court denied appellant's request for a hearing on his motion for new trial and denied the motion for new trial itself.

On direct appeal, appellant brought ten points of error. In point of error number seven, he argued that the trial court erred in denying his request for a hearing on his motion for new trial. In point of error number eight, he argued that the trial court erred in denying the motion for new trial itself. The Sixth Court of Appeals, with one justice dissenting, overruled all of appellant's points of error and affirmed the judgment of the trial court. With respect to its overruling of appellant's seventh and eighth points of error, the court of appeals explained, in part:

The granting or denying of a motion for new trial lies within the discretion of the trial court. We may not substitute our judgment for that of the trial court, but rather we may only decide whether the trial court's decision was arbitrary or unreasonable. To obtain a new trial based on newly discovered evidence, a defendant must show that: 1) the newly discovered evidence was unknown to him at the time of trial; 2) his failure to discover the evidence was not due to his lack of due diligence; 3) the evidence is probably true and would bring about a different result in another trial; and 4) the evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching.

\* \* \*

The affidavits submitted by Wallace do not meet the requirements for the post-trial admission of newly discovered evidence. Motions for new trial based on newly discovered evidence are not favored by the courts and are viewed with great caution. The statements and information in the affidavits are not sufficiently definite to indicate that a different result would have occurred if the affiants' statements were admitted into evidence at a new trial; the evidence referred to in the affidavits is merely impeaching and is cumulative of evidence admitted at trial attempting to place the blame on Williams; and the plot to blame Williams was fully explored and exposed at trial.[1] It may be inferred from all the evidence that, even if Williams made the statements described in Marshall's affidavit, he had heard about the plot to blame him for the assault and was simply speculating

---

1. The record evidence is, in relevant part, exactly as we have discussed it previously.

Whether any of that evidence is evidence of a "plot to blame Williams" is questionable.

about what might happen if he were charged with the assault. Marshall's affidavit states that it was rumored that Williams committed the assault and that he at first denied it. He never retracted his denial, but only speculated about what might happen to him if he was charged with the crime. Moreover, the evidence that Wallace was the attacker is overwhelming, seven witnesses having positively identified him as the assailant. No witness testified that Williams committed the assault. In view of these circumstances, the trial court did not abuse its discretion in refusing to hold a hearing on Wallace's motion or in failing to grant it.

*Wallace v. State*, 75 S.W.3d 576, 589 (Tex. App.-Texarkana 2002) (citations omitted).

In dissent, Justice Grant argued:

Robert Wallace raised an issue contending that he was entitled to an evidentiary hearing on his Motion for New Trial. The majority opinion does not address this matter, but rather addresses whether he is entitled to a new trial.

Counsel duly requested a hearing on the Motion for New Trial. The record indicates that no evidentiary hearing was held and the Motion for New Trial was overruled.

The defendant need only assert reasonable grounds for relief that are not determinable from the record in order to be entitled to a hearing. The purpose of the hearing is to fully develop the issues raised in the motion.

Prior to the trial, two of the trial witnesses had stated that "Billy" had committed the assault in question, but they later changed their stories to say that Wallace had committed the assault. The affidavit of Donna Marshall states that Billy Ray Williams had told her that he had called an attorney in Fort Worth to determine whether he would

"get jail time" if he confessed, and he stated that the lawyer had stated he would go to jail and advised against confessing. Although this is not a direct admission by Williams that he had committed the assault in question, it raises a strong inference.

The affidavit clearly shows that this statement was made to Marshall after Wallace had been convicted on the assault charges. She further stated Williams had told her he moved to another town right after this incident had occurred and had come right back after the conviction of Wallace.

This affidavit was sufficient to raise facts which would entitle Wallace to an evidentiary hearing on his Motion for New Trial.

I would abate this case and remand it to the trial court for an evidentiary hearing on the Motion for New Trial.

*Id.* at 590–591 (citation omitted).

We granted appellant's petition for discretionary review to determine whether the court of appeals erred in overruling his seventh point of error. See Tex.R.App. Proc. 66.3(e). Appellant argues now that the court of appeals erred in upholding the trial court's refusal to hold a hearing on his motion for new trial, and that the court of appeals did so because it "confused the elements of whether an evidentiary hearing should have been held [on his motion for new trial] with whether a new trial should have been granted." The State argues in response that the court of appeals' opinion "correctly applies the law."

## Analysis

■ Article 40.001 of the Texas Code of Criminal Procedure provides that "[a] new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial."

Under that statute, a defendant is entitled to have his motion for new trial granted if (1) the newly discovered evidence was unknown to him at the time of trial; (2) his failure to discover the new evidence was not due to his lack of due diligence; (3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result in a new trial. *Keeter v. State*, 74 S.W.3d 31, 36–37 (Tex. Crim.App.2002).

■■■■ A defendant is entitled *to a hearing* on his motion for new trial if the motion and accompanying affidavit(s) "rais[e] matters not determinable from the record, upon which the accused could be entitled to relief." *Reyes v. State*, 849 S.W.2d 812, 816 (Tex.Crim.App.1993). To be sufficient to entitle the defendant to a hearing, the motion for new trial and accompanying affidavit(s) "need not establish a prima facie case" for a new trial. *Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim.App.1994). Rather, they "must merely reflect that reasonable grounds exist for holding that such relief could be granted." *Martinez v. State*, 74 S.W.3d 19, 22 (Tex.Crim.App.2002). The purpose of the hearing is to give the defendant an opportunity to fully develop the matters raised in his motion. *Id.* at 21. If the trial court denies a hearing on the motion for new trial and the defendant appeals from that denial, the appellate court must review the trial court's decision for abuse of discretion. *Id.* at 22.

■■■■ It is apparent on the face of the court of appeals' opinion that the court used the wrong legal standard when it addressed appellant's claim that the trial court erred in denying his request for a hearing on his motion for new trial. The court of appeals asked only whether, on this record, the trial court could have reasonably denied appellant's motion for new trial, when the court of appeals should have asked whether, on this record, the trial court could have reasonably denied appellant *a hearing* on his motion for new trial.

■■■■ We could, at this point, properly remand the case to the court of appeals so that it might apply the correct legal standard to appellant's claim. See Tex.R.App. Proc. 78.3; *Loesch v. State*, 958 S.W.2d 830, 832 (Tex.Crim.App.1997). However, acting within our discretion and in the interests of judicial economy, we will proceed to explain why the court of appeals reached the correct result in this case, *i.e.*, why the record shows no clear abuse of discretion on the part of the trial court in denying appellant a hearing on his motion for new trial.

As we noted previously, at appellant's trial five eyewitnesses, including the victim, positively identified appellant as the assailant. Two other witnesses testified that they saw appellant leave the crime scene carrying a baseball bat. On this record, the trial court could have reasonably concluded (a) that the strength of the prosecution's case was such that the new evidence suggested by the affidavits, even if true, was not compelling enough to probably bring about a different result in a new trial and, therefore, (b) that appellant's motion and accompanying affidavits did not show that he could be entitled to relief. Compare *Martinez v. State*, 74 S.W.3d at 22 (trial court abused its discretion in denying defendant a hearing on his motion for new trial because motion and accompanying affidavits put court "on notice that reasonable grounds existed to believe that counsel's representation may have been ineffective"). Thus, the court of appeals did not err in upholding the trial court's denial of appellant's request for a hearing on his motion for new trial.

We affirm the judgment of the court of appeals.

JOHNSON, J., filed a dissenting opinion.

WOMACK, J., did not participate.

JOHNSON, J., filed a dissenting opinion.

I agree with the Court's analysis of the issues; I disagree only with its disposition. Because I believe that this cause should be remanded to the court of appeals for reconsideration under the correct legal standard, I respectfully dissent.