

**NUMBER 13-07-00520-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**SHARONICA DILWORTH,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

### On appeal from the 24th District Court
### of Jackson County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Yañez, Garza, and Vela
### Memorandum Opinion by Justice Garza

Appellant, Sharonica Dilworth, was found guilty of intentionally or knowingly causing serious bodily injury to a child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.04(a)(1), (e) (Vernon Supp. 2008). Dilworth was sentenced to 65 years' imprisonment and was assessed a $10,000 fine. She now appeals her conviction, contending by two issues that the prosecutor engaged in misconduct, and by one issue that the court erred in denying her counsel the opportunity to voir dire the jury on the issue of punishment. We affirm.

### I. BACKGROUND

On May 29, 2007, a Jackson County grand jury indicted Dilworth on four counts of

causing serious bodily injury to a child.[1]  *See id.*  On July 30, 2007, Dilworth filed a timely sworn motion for community supervision, entitled "Application for Community Supervision From The Jury."  *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 4(e) (Vernon Supp. 2008).  The motion read in its entirety as follows:

### APPLICATION FOR COMMUNITY SUPERVISION FROM THE JURY

### TO THE HONORABLE JUDGE OF SAID COURT:

Now comes Sharonica Dilworth, Defendant in the above entitled and numbered cause, before the trial of this case has begun, and, as required by law, files this Application for Community Supervision and moves that, in the event of conviction, Sharonica Dilworth be granted community supervision in said cause, and in support of this motion, Sharonica Dilworth shows the following:

Sharonica Dilworth has never before been convicted of a felony in the State of Texas or any other State.

**WHEREFORE, PREMISES CONSIDERED**, Sharonica Dilworth prays that community supervision be granted for whatever punishment may be assessed in this cause in the event that Sharonica Dilworth is convicted.

During pre-trial proceedings on July 30, 2007, Dilworth's counsel suggested to the trial court that the motion for community supervision served as an election to have the jury assess punishment, and consequently that voir dire was necessary as to the issue of punishment.  The trial court, ruling that Dilworth did not meet the requirements of section 2(b) of article 37.07 of the Texas Code of Criminal Procedure, found that no proper election was made to have the jury determine punishment.  *See id.* art. 37.07, § 2(b) (Vernon Supp.

---

[1] The indictment contained four counts, with each count consisting of two paragraphs.  The first count alleged that Dilworth knowingly or intentionally caused bodily injury to a child, J.S.; the second count alleged that Dilworth did so recklessly; the third count alleged that Dilworth did so with criminal negligence.  *See* TEX. PENAL CODE ANN. § 22.04(a)(1) (Vernon Supp. 2008) (providing that a person commits an offense if she intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission causes serious bodily injury to a child).  The first paragraph of each of the first three counts alleged that Dilworth threw the child from the stairs, dropped the child from the stairs, and allowed the child to fall from the stairs, respectively.  The second paragraph of each of the first three counts alleged that Dilworth caused serious bodily injury to J.S. "by a manner and means unknown to this Grand Jury."

The fourth count alleged that Dilworth caused serious bodily injury to J.S. by omission while, as the child's mother, she had a legal and statutory duty to protect and provide medical care to the child.  *See id.* § 22.04(b) (Vernon Supp. 2008) (providing that an omission causing serious bodily injury to a child is an offense if the actor has a legal or statutory duty to act).  The first paragraph of the fourth count alleged that Dilworth intentionally or knowingly failed to provide medical care; the second paragraph alleged that Dilworth recklessly failed to do so.

2008). Dilworth's counsel was therefore denied the opportunity to conduct voir dire on the issue of punishment.

Prior to the commencement of trial on July 31, 2007, the prosecutor indicated that he would be willing to consent to Dilworth's election to go to the jury for punishment if she waived any objection with regard to the fact that voir dire had not been conducted on the issue of punishment. *See id.* (stating that "[i]f a finding of guilty is returned, the defendant may, with the consent of the attorney for the state, change his election of one who assesses the punishment"). Specifically, the following exchange occurred:

| | |
|---|---|
| [State's attorney]: | . . . Having reflected on it last night, I'm agreeing, if the Defense wants to, I'll agree to let them change their election to go to the jury, provided that they agree on the record that they have no objection to the fact that the jury wasn't voir dired on probation; that if they do have objection to that then, of course, I will not withdraw my letting them use the election, because I don't think it would be fair to let them have what they want but then at the same token let them have an avenue of appeal. So with that stipulation the State would—with those stipulations the State would withdraw any objection to the defendant changing her election to go to the jury for punishment. |
| THE COURT: | [Dilworth's attorney]? |
| [Dilworth's attorney]: | And we're not going to—we have no objection to the jurors not being voir dired on the punishment phase. |
| THE COURT: | So you're waiving any objection that might arise from that? |
| [Dilworth's attorney]: | Yes, Your Honor. |
| THE COURT: | And do you state now, because I don't want to do this again— |
| [Dilworth's attorney]: | Yes, Your Honor. |
| THE COURT: | —are you going to the jury for punishment? |
| [Dilworth's attorney]: | Yes, Your Honor. On the record, we are going to the jury for punishment. |

3

On August 3, 2007, the jury found Dilworth guilty of causing serious bodily injury to a child by act or omission.[2]  *See* TEX. PENAL CODE ANN. § 22.04(a)(1), (e).  At the punishment phase of the trial, which was conducted before the jury, the prosecutor stated the following as part of his closing argument:

> You know, sometimes as your prosecutor of trying these cases and with defendants having so many rights, I feel like I'm trying to hold the ocean back with a broom or sweep the sun off the porch with a broom.  They've got so many rights.  I understand.  You know, before I completely despair I think, wait a minute, Bobby, they've got to go through a jury.  Before they just get to run roughshod on this, they're going to have to face a jury who will make the ultimate decision.
>
> . . . .
>
> I try not to get the Bible out and thump it, and I'm not, but, also, my faith is important to me.  You know – and I know that when you're sitting there God knows you're thinking come on, Bobby, are we really going to have anything to say about – will this really deter anybody?  Well, think of it like this.  I think it's in James.  No, I know it's in James 3, 2 to 4.  It says: God said that a small bit in the mouth of a horse can turn that horse – that large horse.  And a tiny rutter [sic] can turn a huge ship.  And I promise you, people listen.  And your verdict can and will deter people.
>
> . . . .
>
> You know, in Matthew it says that should anyone injure one of these little ones of mine, Jesus said, better that he would have a millstone around his neck and be cast into the sea.  That's the severity of this type of crime.
>
> And I promise you this.  As your prosecutor in handling these types of cases, you'll never have in this county law and order until you have severity of sentence.  It won't happen.  A lot of prosecutors won't get up here and talk to juries like this because it takes a lot of courage to do what you're doing.
>
> . . . .
>
> I'm your prosecutor.  Every day I have defense lawyers coming to me, "Well, Mr. Bell, what will you give me for this crime, what will you give me for this crime?"  I feel like Monte [sic] Hall and Let's Make A Deal.  I'll tell you this, though.  I listen to you.  Make no mistake about it, I listen to you.  If you tell me that people who abuse children, defenseless little babies, then cover it up and are more concerned about themselves, if you want them to get light verdicts, probation, whatever, I'll listen to you.  I don't believe that.  I will listen to you.  The next time that this happens I'll say no, I have presented

---

[2] The jury charge only asked whether Dilworth was guilty of:  (1) the offense alleged in the second paragraph of Count 1 of the indictment; or (2) the offense alleged in the first paragraph of Count 4 of the indictment.

4

this type of case and the jury told me this is what they want. And I'll dig my heels in the sand and if it means having a trial and taking up your week, I'll do it, because it's by God the right thing to do.

Following the punishment hearing, the jury assessed Dilworth's punishment at 65 years' confinement in the Institutional Division of the Texas Department of Criminal Justice, and a $10,000 fine. The trial court certified Dilworth's right to appeal on August 23, 2007, and this appeal followed.

## II. DISCUSSION

### A. Prosecutorial Misconduct and Constitutional Error

By her first two issues, Dilworth claims that: (1) the prosecutor's references to the Bible during the punishment phase of the trial violated the Establishment Clause of the First Amendment to the United States Constitution, *see* U.S. CONST. amend. I, and the corresponding provision of the Texas Constitution, *see* TEX. CONST. art. I, § 6; and (2) the prosecutor's statement with regard to defendants' rights deprived her of a fair and impartial trial.

In order to preserve error in cases of prosecutorial misconduct, the defendant must (1) make a timely and specific objection, (2) request an instruction that the jury disregard the matter improperly placed before it, and (3) move for a mistrial. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). Here, Dilworth's trial counsel failed to object to either the prosecutor's references to the Bible or his statement with regard to defendants' rights. The State contends that Dilworth waived this issue because her trial counsel did not object to the statements when they were made.[3]

---

[3] The State also urges that Dilworth's first issue is multifarious and therefore presents nothing for review. In response, Dilworth argues that the current appellate rules do not permit a court to overrule an issue or point of error as multifarious, citing *Chimney v. State*, 6 S.W.3d 681, 688 (Tex. App.–Waco 1999, pet. ref'd), for this proposition. However, we have held since *Chimney* that multifarious points present nothing for review. *See Taylor v. State*, 190 S.W.3d 758, 764 (Tex. App.–Corpus Christi 2006), *rev'd on other grounds*, 233 S.W.3d 356 (Tex. Crim. App. 2007); *see also Thieleman v. State*, No. 13-03-570-CR, 2006 Tex. App. LEXIS 9458, at *24 (Tex. App.–Corpus Christi Oct. 26, 2006, pet. ref'd) (not designated for publication). Nevertheless, we may elect to consider multifarious issues if we are able to determine, with reasonable certainty, the alleged error about which the complaint is made. *Stults v. State*, 23 S.W.3d 198, 205 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd); *see also Cadena v. State*, No. 13-03-485-CR, 2004 Tex. App. LEXIS 6842, at *2 (Tex. App.–Corpus Christi July 29, 2004, no pet.) (mem. op., not designated for

Dilworth argues that the issue is not waived because the alleged error was fundamental. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (if no proper objection made at trial and the accused must claim that the error was "fundamental," he will obtain a reversal only if the error is so egregious and created such harm that he "has not had a fair and impartial trial"). Dilworth further argues that the prosecutor's references to the Bible amounted to "structural" error, rendering the trial fundamentally unfair and obviating the need for her trial counsel to object. However, she does not cite authority supporting this contention.

Dilworth does cite *Lucero v. State*, 246 S.W.3d 86, 89 (Tex. Crim. App. 2008), in which the Texas Court of Criminal Appeals considered whether it was structural error for the trial court to have denied the defendant an evidentiary hearing on his motion for new trial based on the jury's reading of Biblical scripture during the punishment-phase deliberations. The court found that any error was harmless because the record revealed no "reasonable grounds" for concluding that the Bible references affected the jury's verdict. *Id.* at 95 (citing *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003) (defendant is entitled to hearing on motion for new trial to make a record of matters not determinable from the record if the defendant establishes the existence of "reasonable grounds" showing that the defendant "could be entitled to relief")). Dilworth also cites *Granados v. State*, 85 S.W.3d 217, 234-36 (Tex. Crim. App. 2002), in which the court of criminal appeals considered whether the trial court erred in denying the defendant's motion for mistrial based on a juror's request to read Bible passages to the jury. The trial court denied the juror's request, and Granados then asked the trial court to inquire as to whether the juror had already concluded that the defendant would receive the death penalty. *Id.* at 234-35. The court denied the request, "saying that it would be improper and unconstitutional to instruct jurors that they cannot consult books of faith in times of spiritual need." *Id.* at 235.

---

publication). Because the alleged error to which Dilworth objects is clear, we elect to address her first issue.

Finally, Dilworth cites *Duggan v. State*, 778 S.W.2d 465, 468 (Tex. Crim. App. 1989), for the following proposition:

> As a trustee of the State's interest in providing fair trials, the prosecutor is obliged to illuminate the court with the truth of the cause, so that the judge and jury may properly render justice. Thus the prosecutor is more than a mere advocate, but a fiduciary to fundamental principles of fairness.

*Id.* (citing *Berger v. United States*, 295 U.S. 78, 88 (1935)). Dilworth claims that "the prosecution denigrated the rights of the accused," and that a fundamental error therefore occurred.

Neither *Lucero*, *Granados*, nor *Duggan* support Dilworth's contention that the prosecutor's references to the Bible or comments on defendants' rights amounted to structural or fundamental error. Nor do they support her contention that those statements violated her constitutional rights. Dilworth's first two issues are overruled.

## B.     Waiver of Voir Dire on Punishment

By her third issue, Dilworth contends that the court erred by not giving her trial counsel the opportunity to voir dire the jury on the issue of punishment. Specifically, Dilworth argues that the trial court erred when it ruled that the document she filed prior to trial, entitled "Application for Community Supervision From The Jury," did not serve as a valid election to have the jury assess punishment under section 2(b) of article 37.07 of the Texas Code of Criminal Procedure.[4] The State contends that Dilworth waived this issue. Without determining whether Dilworth's "Application for Community Supervision From The

---

[4] Section 2(b) of article 37.07 of the Texas Code of Criminal Procedure provides:

Except as provided by Article 37.071 or 37.072, if a finding of guilty is returned, it shall then be the responsibility of the judge to assess the punishment applicable to the offense; provided, however, that (1) in any criminal action where the jury may recommend community supervision and the defendant filed his sworn motion for community supervision before the trial began, and (2) in other cases where the defendant so elects in writing before the commencement of the voir dire examination of the jury panel, the punishment shall be assessed by the same jury, except as provided in Section 3(c) of this article and in Article 44.29. If a finding of guilty is returned, the defendant may, with the consent of the attorney for the state, change his election of one who assesses the punishment.

TEX. CODE CRIM. PROC. ANN. art. 37.071 (Vernon Supp. 2008).

7

Jury" served as an effective election to have the jury assess punishment, we agree with the State that Dilworth waived the issue.

As noted, neither party conducted voir dire on the issue of punishment due to the trial court's determination that Dilworth had not properly elected to go to the jury for punishment. The State's attorney later offered to consent to go to the jury for punishment on the condition that Dilworth waive any objection she may have had to her lack of an opportunity to voir dire the jury on that issue. Dilworth's attorney agreed to the bargain, stating expressly that "we have no objection to the jurors not being voir dired on the punishment phase." Dilworth now claims that "[s]he did not on the record waive the right to voir dire on punishment and did not on the record understand the right she waived." However, Dilworth does not point to any authority indicating that her trial counsel lacked the authority to waive this objection. *See* TEX. R. APP. P. 38.1(h).

We conclude that Dilworth's trial counsel effectively waived any objection she may have had to her lack of an opportunity to voir dire the jury on the issue of punishment. Accordingly, her third issue is overruled.

### III. CONCLUSION

The judgment of the trial court is affirmed.

DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).
Memorandum Opinion delivered and
filed this the 4th day of December, 2008.

8