

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00433-CR

CHARLES LEVI MILLER                                                    APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

----------

### FROM THE 90TH DISTRICT COURT OF YOUNG COUNTY
----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

A jury found appellant Charles Levi Miller guilty of aggravated assault with a deadly weapon, a knife, and assessed his punishment at fifteen years' confinement and a fine of $2,000. In two issues, Miller argues that the trial court abused its discretion by admitting into evidence four knives and photographs of those knives and that in-court identifications of him by two witnesses were

---

[1]*See* Tex. R. App. P. 47.4.

inadmissible because they were tainted by an impermissibly suggestive pretrial identification procedure. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

One afternoon, Kathy McCain was working alone at the Akers & Fultz office on Loving Highway in Graham when a man, later identified as Miller, came to the door of her office. Miller asked McCain if she knew the owner of an adjacent building. McCain directed the man to Coleman's Packers, the business across the street, for the information. Miller left McCain's office and went to Coleman's Packers, where he spoke to Stacy Creswell. Approximately ten minutes later, Miller returned to McCain's office and asked to borrow a phone book. Miller returned the phone book to McCain, and when she reached out to take it, Miller grabbed her left arm and pushed her down onto a couch. Miller held a knife to McCain's throat and told her to do as he said or he would slit her throat. McCain began praying out loud to God and Jesus and pleaded with Miller to stop. Miller attempted to take off McCain's jeans while still holding the knife but was unable to do so. McCain continued pleading with Miller and finally convinced him to stop. Miller stood, releasing McCain, hugged her, and left.

McCain and Creswell each gave officers a description of Miller and the truck he was driving. Officers located the truck at a house and found Miller lying on the floor inside the house. Miller accompanied officers to the police station and consented to a search of his home and truck. Officers found two knives in

2

the house and two in the truck. At the police station, Miller confessed to the assault and gave a written statement to officers.

Two days after the attack, Sergeant Terry Vanlandingham met with McCain at the Akers & Fultz office and met with Creswell at the Graham Police Department to show them a photographic lineup that he had compiled from the Young County Jail database. The photographic lineup consisted of six black and white photographs of males approximately the same size and build. Each photograph contained a marker with an identification number and the booking date of the individual. Miller's photograph was the only one that had the same booking date as the offense date. McCain and Creswell both identified Miller in the photographic lineup.

### III. ADMISSIBILITY OF THE KNIVES AND PHOTOGRAPHS

In his first issue, Miller argues that the trial court abused its discretion by admitting into evidence the four knives that were found in his truck and house and the photographs of those knives because there was no evidence that the knives were used in the commission of the assault. We will assume error and apply a harm analysis.[2]

---

[2]The parties appear to dispute whether the knives were admissible as evidence of the actual knife used in the assault or as demonstrative evidence of replicas or duplicates of the actual knife used. We need not decide whether the complained-of evidence was admissible for either reason because, applying the appropriate standard of review, we hold that any error was harmless.

Because any error in admitting this evidence was not constitutional, rule 44.2(b) is applicable. Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if we have a fair assurance that the error did not influence the jury, or had but a slight effect. *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the alleged error, closing arguments, and even voir dire, if applicable. *Id.* at 355–56.

In this case, the State presented ample evidence of Miller's guilt, including his use of a deadly weapon. McCain testified that Miller held a knife to her throat and threatened to slit her throat if she did not cooperate. She testified that she could not "be for sure" that the knife used in the assault was one of the four knives recovered by officers from Miller's truck or house. Officers that arrived on

4

the scene after the assault saw visible redness on McCain's neck and took photographs of her injuries. Miller later confessed to the attack in writing, although he did not mention the use of a knife in his confession. The testimony about the knives found in Miller's truck and home was not extensive and focused on where the knives had been found and the fact that McCain could not positively identify one as the one used in the attack. The State made no mention of the knives in its closing arguments, but the defense's closing argument reiterated to the jury that none of the knives were ever identified by McCain.

Having examined the record as a whole, we have a fair assurance that any error in admitting the knives found in Miller's truck and house, and photographs of those knives, did not substantially sway the jury to finding him guilty of assault with a deadly weapon. *See Solomon*, 49 S.W.3d at 365; *Johnson*, 967 S.W.2d at 417. Accordingly, we hold that any error in admitting the knives and photographs of the knives did not have a substantial or injurious effect on the jury's verdict and did not affect Miller's substantial rights. *See King*, 953 S.W.2d at 271. Thus, we disregard any error. *See* Tex. R. App. P. 44.2(b). We overrule Miller's first issue.

## IV. IN-COURT IDENTIFICATIONS

In his second issue, Miller argues that Creswell's and McCain's in-court identifications of Miller as the person who committed the assault lacked indicia of reliability because their out-of-court identifications were based on an impermissibly suggestive photo array.

5

## A. Standard of Review

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  Tex. R. App. P. 33.1(a)(1); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009).  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule.  Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).  A reviewing court should not address the merits of an issue that has not been preserved for appeal.  *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh'g).

## B. Preserving Issues Challenging Pretrial Photo Arrays

When attacking an in-court identification as being tainted by an impermissibly suggestive pretrial identification procedure, generally, a motion to suppress the identification should be filed and a hearing held out of the jury's presence.  *Barley v. State*, 906 S.W.2d 27, 32 (Tex. Crim. App. 1995), *cert. denied*, 516 U.S. 1176 (1996); *Martinez v. State*, 437 S.W.2d 842, 848 (Tex. Crim. App. 1969); *Wallace v. State*, 75 S.W.3d 576, 584 (Tex. App.—Texarkana 2002), *aff'd on other grounds*, 106 S.W.3d 103 (Tex. Crim. App. 2003).  "At the very least, there should [be] a trial objection to the in-court identification made by the witnesses who viewed the photographic array."  *Barley*, 906 S.W.2d at 32.

6

Failure to complain about or object to the in-court identification amounts to a procedural default and waives any complaint on appeal. *Id.*; *Wallace*, 75 S.W.3d at 584. It is not enough to object to the introduction of the photographic lineup to preserve a complaint on the in-court identification. *See Wallace*, 75 S.W.3d at 584.

### C. Waiver of Complaint Regarding Pretrial Photo Array

Miller argues on appeal that neither McCain's nor Creswell's initial descriptions were particularly specific or adequate to identify Miller and that the date of Miller's arrest that is visible on the photograph of him in the lineup had the "corrupting effect" of a suggestive pretrial lineup. However, Miller did not file a motion to suppress the in-court identifications or object when either Creswell or McCain identified him in court. *See Barley*, 906 S.W.2d at 32; *Wallace*, 75 S.W.3d at 584. Consequently, Miller has not preserved this issue for appeal. *See* Tex. R. App. P. 33.1(a)(1). We overrule Miller's second issue.

## V. CONCLUSION

Having overruled Miller's two issues, we affirm the trial court's judgment.


PER CURIAM


PANEL:  WALKER, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  July 12, 2012